with our first case which is number 23-11751 United States v. Renaldo Harrell. Ms. Budrani. Good morning, your honors, and may it please the court. I'm Shubhudrani, assistant federal public defender on behalf of Renaldo Harrell. Mr. Harrell's case stands alone. He had both the right and the desire to put the government to its burden of proving his guilt to a jury of his peers on the three substantive counts charged in the indictment as well as on the act of sentencing enhancement charged. In order to effectuate that right, he moved to bifurcate his trial. And the court, without reason and based on an error of law, denied that motion and his resulting trial was infected with irreparable prejudice because the jury learned the highly prejudicial fact that Mr. Harrell had three prior separate convictions. This court need look no further to appreciate the prejudice than the government's arguments to the Supreme Court in Erlinger and its repeated arguments about Mr. Harrell's three priors to the jury here. As a result, this court vacate his convictions and remand for a new trial. As the Supreme Court recognized in both Woodin and in Erlinger, defendants have a right to a jury determination. Let me ask you a question on Erlinger. Do you read Erlinger as having imposed a requirement on a district judge to bifurcate? No, Your Honor. There's no per se rule. You would agree that a district court judge has considerable discretion in deciding whether or not to bifurcate, right? Yes. Tell me why this would be an abuse of discretion. I believe. Particularly when by virtue of the stipulation that came out in the case, all the jury learned was that there were three priors, not what they were for, none of the underlying facts would have, which would have been very damning. Why is this an abuse? So I think it's an abuse of discretion for at least two reasons. First being a complete misapplication error of law, which is a per se abuse of discretion. The district court here was operating under the misapprehension that defendants did not have a Sixth Amendment right to have a jury make the occasions clause determination, and that is what drove the decision or the denial of bifurcation. Additionally, aside from the error of law, there really was no exercise of discretion here. All the district court said with regard to bifurcation was that it was not appropriate, but there was no real of the prejudice that would ensue to Mr. Harrell of the jury learning about even the fact of his three prior offenses. This is not really even bifurcation. I mean, we refer to it that way because it feels that way, but bifurcation is when you are trying to slice and dice different charges where evidence as to one charge may overwhelm the charge for the other. But the ACA issue is not a guilt innocence issue. It's a sentencing issue. Correct. It should be handled after the guilt phase, so it's not really bifurcation. The Supreme Court used that language because the parties did, but it's not really bifurcation of criminal charges or even elements of a single charge, which might be improper under our precedent. It's just dealing with a sentencing issue. There is a separate problem is that everybody wants to roll everything up into one pretty bundle. Well, not everybody. Roll up everything into one pretty efficient bundle and go forward. And I don't know of a case where you're allowed to put in sentencing issues into a guilt innocence trial where those issues aren't relevant to guilt innocence. They certainly were not. And Judge Marcus, as to your question about prejudice, the government referenced Mr. Harrell's three prior convictions three times in the first 10 minutes of their closing argument. It was the opening line of their closing argument and was so prejudicial. Why did you not ask for a curious construction when the government attorney said he's a gun-toting, drug-slinging, three-time convicted felon? Why was that not a request for curious construction? I think looking at the trial record here, I can see why perhaps asking for a curative or objecting would have been appropriate. Because if he doesn't go beyond saying that, there's no detail whatsoever other than the fact they point out in the stipulation that it's three prior felony convictions in return for those three different occasions. That is true. But every additional prior that is mentioned sort of increases a jury's belief that this person sitting in front of them has the propensity for criminality. Well, that would be the case every time you have a 922G situation. You're saying that creates such a presence that it can't be overcome? I'm not saying that it can't be overcome. It is prejudicial. But in the case of a 922G, where there is an element of the 922G offense, is that the individual has a prior felony conviction. It's what makes the possession of the firearm unlawful. There, there's a purpose. The government has a very strong reason for needing it. It's part of their evidence. It's part of their burden. It's very different from here. It's not an element of any of the three charged offenses that he had three prior convictions. It truly does just go to the sentencing enhancement. And it serves no purpose. It doesn't bolster any of the other elements. It's truly just prejudicial. And sort of the government's argument is... The critical question, of course, every piece of evidence that's compelling is prejudicial against whom the piece of evidence is offered. The rules speak of whether it is unfairly prejudicial. So simply to tell me that a piece of evidence is prejudicial doesn't get you all that far in the equation. You've got to show more than that. It was unfairly prejudicial here because I think what you're getting at is there's always a probative prejudice balance when it comes to what comes in at trial. But here, there was no balance or no discussion of any of the balancing of the factors done here by the district court, which I think contributes to the abuse of discretion because there was no exercise of discretion here. But furthermore, there is nothing on the other side of the scale for why this is probative, why it's required, why the government needed it to come in during this first phase of the trial where the government's proof was as to the three elements of this trial. And it's especially prejudicial here where there was overwhelming evidence of guilt, especially as to the counts involving a firearm. So it was unfairly prejudicial for the jury to learn that this man had three prior convictions committed on separate occasions. And you only need to look at how the government chose to argue this case to the jury to understand just how prejudicial it was. One of the things they said was, I assure you, ladies and gentlemen of the jury, that a three-time convicted felon who knows he cannot possess a gun will do anything he can to get away from it. There's no need to mention that he has three priors. There's one stipulated too. You can say a convicted felon. The three-time convicted felon language, it's incredibly prejudicial here. And in terms of prejudice, even Justice Spencer or Justice Warren in Spencer did a whole concurrence where he talked about prejudice. And there's just one sentence that I want to read you because I think it really underscores why this was so prejudicial here. And he says, of course, it flouts human nature to suppose that a jury would not consider a defendant's previous trouble with the law in deciding whether he has committed the crime currently charged against him. It's just hard to ignore the fact that he had three priors. Yeah, I mean, one other way to look at it is that three is worse than one. One is already bad enough. But one is necessary. Right, exactly. Because the government has to prove felon status either through evidence or through a stipulation. So there's no getting around that. But for my purposes, I just don't see what's probative about the ACA predicates at the guilt phase of a trial. And frankly, you could have just had the jury in the same way you do with forfeiture issues after a criminal trial is tell the jury, hold on, you've got one more thing to take care of and then resolve it. And to your point on prejudice, nor does the government believe that this is really appropriate. This is the only case I could find where the government did not agree to bifurcation. There was one more case after this case in this district with these exact same two prosecutors, where they tried to file a motion opposing bifurcation, but the district court there denied the motion. It's a pure anomaly. The government's position in Erlinger itself, at oral argument, was we can't think of a reason why we wouldn't agree to bifurcation because of everyone's recognition of just how prejudicial it is for a jury to hear that an individual, the individual sitting in front of them, has three prior felony offenses committed on different occasions. And so with that in mind, the judge's denial of bifurcation here was a pure abuse of discretion and as such requires remand for a new trial. All right. Thank you very much. Ms. Bailey. Good morning and may it please the court.  Alexandra Bailey on behalf of the United States with me at council table is AUSA Abby Waxman, who tried the case below. This court should affirm Mr. Harrell's convictions and act an enhanced sentence because the district court acted well within its discretion to deny bifurcation. I'd like to start with bifurcation since that's been the focus this morning. I'd like to just clarify the record. Mr. Harrell now on appeal is contending that he intended to put the government to its burden of proof on the separate occasions and create trial, but that's not what the record was before the district court. In his motion, which is at DE-43, the defendant represented that council was still trying to meet with the defendant and he had not yet decided whether or not to stipulate to those convictions and the facts supporting the ACA enhancement, but that their position is that even with a stipulation bifurcation was still warranted. So we're not. Isn't he absolutely right about that? I mean, what probative value is there for introducing ACA predicates at the guilt phase of a criminal trial? The probative value is that proving separate occasions is an element of the offense. No. What offense? ACA is a sentencing enhancement. It's not a criminal offense. In Apprendi and Erlinger, the Supreme Court has consistently pushed against this distinction between elements of the offense and sentencing enhancements where they- You can't be convicted of an ACA offense. There's no such animal. You can be convicted of an aggravated 922G with 924E. And the Supreme Court has- You're saying that in an ACA, in a case where the government thinks that ACA governs, the three predicates are elements of the offense, such that the defendant is entitled to acquittal if you don't prove the three predicates? So they could still be convicted of the lesser offense, just the base 922G. So you think 922G in an ACA case is a lesser included of the 924? It's obvious. The Supreme Court has talked about this in broad terms, that this is akin to an aggravated version of the offense. And the point is that in other sentencing enhancements with drug quantities or with 924C, when the defendant brandishes a firearm, or death resulting enhancements with other statutes, we treat that as an element of the offense, even though it's only- Those are intrinsic facts that tell the story of the offense. His prior convictions here do not help tell the story of the 922G charge, or the possession and furtherance of a drug trafficking crime charge at all. I think even in Spencer, the court recognized that the state interest in proving a recidivist enhancement with prior crimes is less cogent than it is when the state is trying to use that same evidence for some other purpose, such as intent with 404B, or to impeach the defendant if he testifies. But they said that that distinction makes no constitutional difference. So we understand that there will be- There's less- There's less probative value, and maybe there will be- Bifurcation will be warranted more often in ACA cases than it is in 922G cases. It's almost never warranted there. But that's something that district courts can decide and do decide based on the facts before them. Why in the world would any district court decide not to bifurcate after Erlinger? So I think at least in two obvious circumstances, one is the circumstance here where the defendant stipulates to that fact. And so all that's coming in is the fact that he has three felony convictions committed on separate occasions. Why do those have to come in in the guilt phase? Courts- Give me a case- It doesn't- Any authority that you know of that allows convictions that go only to sentencing to be admitted, except for when the defendant testifies and has a prior, allows prior convictions to be introduced at the guilt phase of a trial. So this happens routinely with 922G, and I think there are other statutes- No, that's the single felony that the government has to prove as an element of the 922G offense. That's undisputed. The government has to prove as an element of a felon in possession charge that the defendant was a felon and knew of his felon status. You can't get around that. Sometimes a defendant puts the government to the burden of proof, and the government's got to prove that there's a prior conviction, and the defendant makes that choice, sometimes to his or her detriment. But I don't know of any scenario where you get to put in prior convictions that go only to sentencing at the guilt phase of a trial. So I understand Your Honor's concern, but I think we're looking at this backwards. It's not that we have to justify putting this all in. It's bifurcation is the last resort after we decide whether stipulations or limiting instructions can cure the potential prejudice of the evidence that needs to come in for the factors that- But here, the stipulation was forced by the decision to not bifurcate. It's not like he agreed to stipulate before the judge made a decision on bifurcation or no bifurcation. We don't agree that the record supports that he was forced to stipulate. The defendant had not decided whether or not to stipulate, as he stated in his motion to bifurcate. And then at the pretrial conference hearing, even the government said that the defense's position is not that they do not want to stipulate. It's that they don't need to decide that we should bifurcate, and then they'll decide later whether or not they want to stipulate. The defense never corrected that understanding. And in fact, they said to the court, which is on page seven, that if the court- that whether or not the court decides that this is a jury- that this goes to the jury will determine whether or not we decide to stipulate. Not whether the court bifurcates, but whether the court decides that this needs to go to a jury. The government then- One more question on this point. Let's assume that there was a violation. So that's contrary to your argument, but I'm asking you to assume it for purposes of this question. If there is a violation of Erlinger, why was there not prejudice given the government's closing argument and focus on the three convictions? So we think if there was an error, it was on bifurcation, it wouldn't be an Erlinger error. And so this court only reverses the district court's decision on bifurcation if it resulted in compelling prejudice and an unfair trial. Here, all that came in was that the defendant has three prior convictions. The stipulation doesn't reference the nature of the prior convictions. But the government used his thrice convicted status to try to convince the jury that he was guilty of these charges. So- Tell me how that's proper. We don't think that statement can be read as a propensity argument because the government- What do you think it can be read as? So the government twice used the phrase gun-toting, drug-slinging, and prosecutors are allowed to make colorful statements. That was, you're cutting the statement off. What else was gun-toting, drug-toting, gun-slinging? What else was added to that phrase? Three time convicted felon, which is a finding that the jury was going to be asked to make. Not necessarily at the guilt phase. That's something the jury decides at a sentencing phase. We understand that this could have been handled differently, but we don't think that bifurcation should be mandated in every case in which a defendant stipulates to- I think the thrust of the question is this, counsel. Erlinger does not compel bifurcation. It just presents pretty powerful reason about why a district judge ought to bifurcate. Tell me what relevance in this case where you have three charges, one, possession of a firearm and ammunition by a convicted felon in violation of 922 G1, possession with intent to distribute a controlled substance, 841, and possession of a firearm in furtherance of a drug trafficking crime. Those are the charges the jury faced. What relevance did the fact that he had three prior convictions have to any of the issues the jury had to decide? Of course, the jury had to decide that those- he had three priors on three separate occasions, so it was relevant. But we think that it's clear that that language, drug toting, gun toting, was repeated just pages later when referring to what the defendant did at that time. And so, yes, when talking about what the government had to prove, the prosecutor did talk about the fact that he was a felon, which would also happen in 922 G prosecutions. We don't think one verse three is the difference between never bifurcating and always bifurcating. And we'll also note that none of these statements drew an objection and no limiting instruction was requested. And even then, the court instructed the jury- Just help me with that. So when the prosecutor said that the defendant was a drug slinging, gun toting, three-time convicted felon, was there an objection? No, Your Honor. So we're reviewing it for plain error? Yes. And I also want to clarify, the defense hasn't raised that these comments are improper. The plain error would go to whether or not the closing argument constituted error, but not whether or not there was an Erlinger error, right? So I think a bifurcation error, not an Erlinger error, because the defendant did receive a jury trial, so I don't think we could characterize this as an Erlinger error. Well, he argued he was denied a Sixth Amendment right. So would that not go toward the Erlinger error? So I think their argument depends on whether or not bifurcation was proper because if the district court did not abuse its discretion in denying bifurcation, then the defendant chose to stipulate two separate occasions and the jury made a finding on that fact. So he wasn't denied a jury finding on that fact and it was charged in the indictment. So it's not a traditional Erlinger-type error. I think that claim is entirely derivative on whether this court thinks the district court abused its discretion in denying bifurcation. What reason did the district court give for not bifurcating? So the district court said that bifurcation was not warranted and then I don't think there is a clear explanation. I think it's fairly clear that at that point there... What reason did the government give for not bifurcating? The government said, which I think would still be our position, that just the mere fact that one conviction is going to be introduced, verse three, is not compelling prejudice warranting bifurcation and that the district court can look at what evidence is going to come in on separate occasions and decide... If the government argued there would be a heavy burden on the government for bifurcation, what would be that heavy burden? What would be the heavy burden on the government in this case that had been bifurcated? The government argued there would be a heavy burden to bifurcate the trial imposed on them. So I think this court and other courts have recognized that in general bifurcation is not efficient and it takes a hit on judicial resources and so in general it's not the default position. It's something that if there's not a way to limit prejudice absent bifurcation, that's the situation in which district courts jump to bifurcation and when we don't know yet whether there will be a stipulation and what evidence will come in on separate occasions, the court can't assess whether there will be prejudice and whether a limiting instruction or some other avenue will be able to control that prejudice and I think the district court was mindful of that. Immediately after the district court denied bifurcation, she told the government don't reference the nature of the convictions in opening and said that they would talk about the jury charge and that there may be some solution if there's a stipulation or something short of evidence coming in on this. So I think at that point it was premature for the district court to determine there was no way forward that the defendant could not have a trial free of prejudice and we think he did in fact have a trial free of substantial prejudice and so... Tell me why in your view, assuming for the purpose of my question, that there was error. Why is the prejudice here not substantial or compelling? So we think for a few reasons. One is that the jury never learned about any details of the defendant's prior convictions and so it's not as if these priors were not drug convictions but they couldn't draw the inference which the defense says that they could have which is he did it there so he must have done it again here and the district court instructed the jury to consider the evidence on each charge separately that everything the lawyers say is not evidence and is not binding on you and so we think that there's no real risk that when the jury heard the stipulation just once in the presentation of evidence and only heard that Mr. Harrell had three convictions that occurred on separate occasions that that infected the entirety of the trial. If a defendant asks for what we call bifurcation of this separate occasions issue, the district court denies the motion. The defendant says handle this after the guilt innocence phase. This is a sentencing issue. The district court says no, we're going to do it all at the guilt phase and the government then presents evidence of the convictions. Is there prejudice? If they introduced evidence when the district court had said they, I'm sorry, can you repeat the? The defendant seeks what we call bifurcation under Erlinger because the government is going to seek an ACA enhanced sentence. The district court says no, no bifurcation. The defendant declines to stipulate to the three ACA predicates. The government introduces evidence there's no stipulation. The government introduces evidence of the three and maybe even more because maybe it thinks that some of them are going to be challenged and so it introduces evidence of three, four or five prior convictions. Is there a claim for prejudice in that case? I see my time's elapsed. Can I just briefly answer? Sure. So I think in the vast majority of cases, there would likely be prejudice, but there will be a spectrum. So in situations where defendants have convictions that are years apart, the type of evidence that may come in on different occasions may not be prejudicial. We can imagine a defendant who has a drug conviction in the morning and an armed robbery in the afternoon. The type of evidence that needs to come in to prove separate occasions in that type of situation is very likely to be prejudicial because it will likely include the nature and the character and purpose of those offenses. So we think there will be a spectrum. We can't say in every single situation there would be prejudice because the district court may limit the type of evidence that comes in and give very strong curative instructions, but we would agree that in the majority of cases, yes. Ms. Bailey, I wanted to follow up on my question. I had asked you earlier what there was in this case that yielded the conclusion that if there was error on the part of the district judge in letting this in and comment about three priors, et cetera, why it wasn't substantial prejudice in the case. And you said four things, if I heard you right. The first thing you said is, one, the nature of the underlying convictions never came in. So the jury only heard that there were three priors. Two, the jury properly heard that there was at least one prior because it was the guts of the first charge in the case. Then you said that the judge instructed the jury that it was required to consider each charge separately and individually. And then you said there was a charge from the judge that what the lawyers say isn't evidence and isn't binding upon you. What was there about the underlying nature of the case itself and the proofs that came in, if anything, in your view, that would yield the conclusion it wasn't substantial prejudice? Is there anything about the nature of this case? Your colleague got up and said earlier in her opening argument that this was not an overwhelming case. Right. So I think the other thing would be that there was substantial evidence on the other counts. So there was both officers' testimony, body-worn camera footage, the defendant's own false exculpatory statements, the jail call the next day where he refers to the firearm. So I think the court could also look at the evidence, the other evidence on the counts that would sufficiently limit the chance that the jury was left with only those statements to rely on, and that would require us to assume that they did not heed the judge's curative instruction. Thank you. Thank you very much. So I want to start by clarifying, I guess, what the government is saying, what they believe the record in this case demonstrates regarding Mr. Harrell's decision to stipulate. It came after the district court denied his motion to bifurcate. He had agreed to stipulate to the felon element of the 922G1 offense that is in his motion to bifurcate. They seem to be using his lawyer's footnote in the motion that she was going to talk to him about stipulating as sort of proof that he was considering stipulating. I don't read it that way. I think as defense attorneys, it is our obligation to talk to our clients about, do you want to go to trial? Do you want to plead? Do you want to stipulate? Those are just things we have to discuss. And so I don't see how that at all changes the government's position here. I think we saw from the 28Js, it has always been their position to either suggest that these ACCA trials be bifurcated or to not oppose bifurcation when it is requested because in their own words, they recognize the prejudice that in yours from letting a jury hear any information about a defendant's three prior convictions. And then with respect to what, if you do find error here, like what is, is it harmless? I keep hearing compelling prejudice and I think that comes from the government's brief and their citation to United States v. Slaughter. Slaughter was a severance case. It was not a bifurcation case. I think severance and bifurcation are different. Here, I think it's just harmless and there's just no way that the error, the prejudice here could be seen as being harmless to Mr. Harrell. And in terms of whether- Do you get a do over simply because there was a mistake? It wasn't, it was an incredibly prejudicial mistake. I understand, but it isn't ineluctable that there has to be a reversal if there was a mistake. So you have to show something, right? I believe the prejudicial was harmless. How much prejudice has to be shown? Was it harmless? And it was not harmless here. And we can see that simply from, if the government's claim is that the jury convicted him because of the overwhelming evidence of guilt that they presented and that the stipulation only came in in the middle of a witness's testimony in the middle of trial, there's absolutely no need to then reference that he is a three-time convicted felon three times in the first 10 minutes of their closing argument. That is asking for a pure propensity connection between his priors and what he's sitting- Let me ask you, just looking, drilling down into the things she said, is there any significance to be found in the fact that while the jury heard there were three instead of one, and they would have heard one because it was most basic to the charge and everybody agrees, they never learned what the nature of the three were. Is that of any significance here? Only in that- Prejudice would have been much deeper and more profound if they had heard what the underlying crimes were for, right? Yes. But we're on a spectrum of prejudice here. I understand. I'm just trying to drill down. I want you to help me understand why the prejudice is significant enough to pull the trigger, reverse, and remand for a new trial. Because this court can't be confident in the verdict here. You can't be confident that Mr. Harrell received a fair trial here because of the very fact that the jury learned of his three prior felony convictions. And not just that he had three prior felonies, that they were committed on separate occasions. And so, and in terms of him stipulating or not stipulating, he actually has two priors that are potentially on the same occasion. It's not, this isn't a close, clear cut. Of course, he would have stipulated. There were facts that would have gone to the jury. There was an argument to be made that there were not separate occasions here. You'd have a harder argument on prejudice if all you had were the three convictions coming in through a stipulation, but no mention of them being made in the government's closing. I'm not saying you'd lose, but you'd have a harder prejudice argument to make in that scenario. I think, I can agree with that. Yes, Your Honor. Is there any significance here to be drawn when we look at the nature, extent, and conclusion about the prejudice from the fact that it's pretty substantial evidence on some of these counts that had nothing to do with three priors? So, I would disagree with that contention that there was substantial evidence on the counts. As to the firearm, it's a constructive possession case. Let's start with the drug cases. I understand what happened. The evidence the jury heard was that, basically, he was a street dealer on a corner. People were coming and going over an extensive period of time. There were a number of agents that watched. They'd come up. He'd hand them something. They'd hand him money. The next guy would come up, and this would happen repeatedly in the course of it. And then, at some point, he ducks behind a dumpster, looks up, looks down. They see his hand move. He moves away. They come to the dumpster and find a firearm. With regard to the proofs on the firearm, they were circumstantial, but it's pretty substantial, circumstantial evidence here. Are we to draw anything from the nature and extent of the proofs that did come in about the nature and extent of the prejudice? I'm just trying to get you to drill down and help me grapple with whether, if there were error, this was fatal or not. I disagree that the evidence was overwhelming in any respect, especially on the firearm counts, which are what then made him ACCA and also an inmate. My characterization was not overwhelming. My characterization was pretty substantial. I also disagree that it was pretty substantial. I understand, and you can tell me why with regard to the... As to the gun... I started with the drug charge. So we didn't actually challenge sufficiency of the evidence as to count to, which was the drug charge. That was pretty substantial on the drug charge. Is there any significance in the fact that the issue we have to face that there was pretty substantial evidence on the drug charge? We're talking about prejudice in hearing of the totality of the fairness of this enterprise. Yes, because if you've heard that someone is a three-time convicted felon, and then you're maybe hearing evidence on one count that you're like, okay, maybe he dealt the drugs, but there's not as good evidence or not as overwhelming evidence or whatever word you wanna use for the other two counts, of course, that's gonna sway a jury's decision to be like, well, I know he's done this many times before, so he probably did it all here, even if I have some questions. And there are questions here in this record. There's no fingerprints on the gun and no DNA on a gun that they're saying he held in his waistband for the entirety of a day while he was being surveilled. He surveilled for an entire day. No one ever sees a gun. This is a publicly used area by many, many people. There's just, there's a lot here that is more supportive of mere presence than it is of his possession of a firearm. I can ask you just one final question. How long did the actual trial take? I believe the trial was three days. So it was a short trial?  Thank you very much. Thank you, and we ask that you reverse. Thank you both very much. Thank you. Thank you.